*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MATTHEW PEASE-MADORE, | ) | Supreme Court Nos. S-16279/16289/ |
| | ) | 16290 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3AN-15-05561/ |
| v. | ) | 05563/05564 CI |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | No.7232 – March 30, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Jon Buchholdt, Buchholdt Law Offices, Anchorage, for Appellant. John K. Bodick, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices. [Winfree, Justice, not participating.]

STOWERS, Chief Justice.

## I.    INTRODUCTION

A prisoner brings three appeals of prison disciplinary proceedings for major infractions. The prisoner, representing himself, originally appealed to the superintendent and subsequently obtained counsel and appealed to the superior court.

In *Wolff v. McDonnell*, the United States Supreme Court held that federal procedural due process requires "a 'written statement by the factfinders as to the

evidence relied on and reasons' for the disciplinary action."[1] In *McGinnis v. Stevens*, this court held that due process under the Alaska Constitution requires a "verbatim record of the [disciplinary] proceedings."[2] The superior court concluded that the incident reports and the audio recordings of the three disciplinary hearings satisfied due process, and denied the three appeals. The prisoner argues on appeal to us that the *McGinnis* verbatim record requirement is in addition to and not in place of the *Wolff* written statement requirement. He also argues that the written disciplinary decisions were inadequate and could not incorporate the incident reports or be supplemented by the verbatim records and that no showing of prejudice is required if the due process requirement set forth in *Wolff* is not met. We affirm the superior court's decisions.

## II. FACTS AND PROCEEDINGS

Matthew Pease-Madore filed nearly a dozen administrative appeals of prison disciplinary proceedings in the superior court; he filed three appeals from the superior court's decisions in this court. These three appeals have been consolidated and are the subject of this opinion. The first of the three appeals relates to a November 17, 2014 incident in which he reportedly told an officer, "I'm not going to be in jail forever and it is going to be very interesting when I meet certain people on the streets." Pease-Madore was charged with making "threats to another of future bodily harm" in violation of 22 Alaska Administrative Code (AAC) 05.400(d)(6) (2004).[3] At his December 3

---

[1]     418 U.S. 539, 564 (1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

[2]     543 P.2d 1221, 1236 (Alaska 1975).

[3]     22 AAC 05.400(d)(6) lists "threats to another of future bodily harm" as a low-moderate infraction.

disciplinary hearing regarding this incident,[4] he pleaded not guilty and testified that his statement "wasn't meant in a threatening way." The officer testified that he "perceived it as a threat" and that he "[stood] by his report as it was written." Pease-Madore was found guilty and a penalty of 20 days in punitive segregation was imposed. He appealed to the superintendent, who denied the appeal.

The second appeal relates to a November 19, 2014 incident in which Pease-Madore reportedly yelled threats and taunts to other prisoners, including graphic descriptions of rape. The correctional officer's incident report noted that "[t]his behavior and yelling . . . had been going on all week" and Pease-Madore was charged with "[e]ngaging in a group or individual demonstration or activity that involves throwing of objects, loud yelling, loud verbal confrontation or pushing, shoving, or other physical contact that interferes with the orderly administration of the facility" in violation of 22 AAC 05.400(c)(15).[5] At his December 3 disciplinary hearing regarding this second incident, Pease-Madore pleaded not guilty and argued that he was guilty of violating subsection (d)(6), a lower-level infraction involving threats of future harm, rather than (c)(15). He also argued that it would not have been possible for the correctional officer to tell that he was the one creating the disturbance, but the officer testified that she recognized his voice and that she and others saw and heard him. Pease-Madore was found guilty and penalties of 40 days in punitive segregation and the loss of 180 days of good time were imposed. He appealed to the superintendent, who granted partial relief,

---

[4] The December 3 disciplinary hearings mentioned in this opinion were three separate hearings, not one combined hearing.

[5] 22 AAC 05.400(c)(15) lists "engaging in a group or individual demonstration or activity that involves throwing of objects, loud yelling, loud verbal confrontation, or pushing, shoving, or other physical contact that disrupts or interferes with the orderly administration of the facility" as a high-moderate infraction.

concurring with the guilty finding and retaining the loss of 180 days of good time but reducing the punitive segregation from 40 to 20 days.

The third appeal relates to a November 20, 2014 incident in which Pease-Madore reportedly told an officer, "You know what's funny? You guys won't even know you are being victimized until it's too late." Pease-Madore was again charged with making threats to another of future bodily harm in violation of 22 AAC 05.400(d)(6). At his December 3 disciplinary hearing regarding this third incident, he pleaded not guilty and argued that his statement was not threatening but funny. The correctional officer testified at the hearing that he perceived it as a threat. Pease-Madore was found guilty and penalties of 20 days in punitive segregation and the loss of 90 days of good time were imposed. He appealed to the superintendent, who granted partial relief, concurring with the guilty finding but reducing the penalties to 10 days in punitive segregation and the loss of 45 days of good time.

Pease-Madore subsequently obtained counsel and filed eleven administrative appeals in superior court, arguing that his due process rights had been violated. The superior court denied the three appeals in this case[6] on the basis that the incident reports and the audio recordings of the disciplinary hearings satisfied due process. The court also found that he had shown no prejudice. Pease-Madore appeals.

## III.   STANDARD OF REVIEW

"Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[7] Whether a party has suffered prejudice is

---

[6]      The other eight appeals are not before us. It appears that the superior court dismissed one of those appeals and remanded the other seven for further action.

[7]      *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011) (quoting *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1233 (Alaska 2003)).

likewise reviewed de novo.**8** And "[i]n an appeal from a judgment of a superior court acting as an intermediate court of appeal," we review the agency decision de novo.**9** "The interpretation of a statute [or regulation] is a question of law to which we apply our independent judgment, interpreting the statute [or regulation] according to reason, practicality, and common sense, considering the meaning of the statute's [or regulation's] language, its legislative history, and its purpose."**10** "We review de novo whether a party has waived a claim on appeal."**11**

## IV. DISCUSSION

### A. An Audio Recording Of A Disciplinary Hearing Satisfies *Wolff*'s Requirement For A Written Statement.

In *Wolff v. McDonnell*, an action brought by inmates against a state prison alleging that the prison's disciplinary proceedings did not comply with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the United States Supreme Court held that procedural due process requires "a 'written statement by the

---

**8** *Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1015 (Alaska 2003) (citing *Stinson v. Holder*, 996 P.2d 1238, 1244 (Alaska 2000)).

**9** *Allen v. State, Dep't of Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1160 (Alaska 2009).

**10** *Johnson v. State, Dep't of Corr.*, 380 P.3d 653, 655 (Alaska 2016) (quoting *Barber v. State, Dep't of Corr.*, 314 P.3d 58, 62 (Alaska 2013)); *see also Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006) ("We review questions of law, including the interpretation of statutes and regulations, according to our independent judgment.").

**11** *Sellers v. Kurdilla*, 377 P.3d 1, 13 (Alaska 2016) (citing *State v. Jacob*, 214 P.3d 353, 361 (Alaska 2009)).

factfinders as to the evidence relied on and reasons' for the disciplinary action."[12] The Court identified three bases for its written statement requirement: (1) "[w]ritten records of proceedings will . . . protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding"; (2) "the provision for a written record helps to [e]nsure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly"; and (3) "[w]ithout written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others."[13] In *McGinnis v. Stevens*, we identified three bases for the verbatim record requirement under the Alaska Constitution: (1) "a verbatim record will help [e]nsure that administrators faced with possible scrutiny by state officials and the public, and even the courts when it is asserted that fundamental constitutional rights may have been abridged, will act fairly"; (2) "[a] verbatim record of the proceedings will furnish a more complete and accurate source of information than the 'written statement' requirement of *Wolff*"; and (3) a verbatim record "will assist in facilitating a more intelligent review of the disciplinary proceeding."[14]

Pease-Madore argues that the requirement of a verbatim record of the proceedings under *McGinnis* does not satisfy *Wolff* but rather is an *additional* requirement under the Alaska Constitution[15] and that "the written statement and the

---

[12]     418 U.S. 539, 542-43, 564 (1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

[13]     *Id.* at 565.

[14]     543 P.2d 1221, 1236 (Alaska 1975).

[15]     Although Pease-Madore did not preserve this issue by arguing it before the superintendent, his briefing to the superior court included the argument that "[t]he
(continued...)

verbatim record serve separate purposes and actually preserve separate phases of the disciplinary proceedings." Specifically, he argues that the Supreme Court's concern about protecting the inmate against consequences from misunderstanding the original proceeding is not mentioned in *McGinnis*; he also argues that because *McGinnis* explained that the verbatim recording furnished a more accurate source of information and facilitated a more intelligent review of the proceedings, the verbatim record requirement must have been in addition to rather than in place of the written statement requirement. He asserts that the *Wolff* written statement requirement memorializes "the evidence relied upon and the reasons for the decision" whereas the *McGinnis* verbatim record requirement memorializes the proceeding itself, except for the part where the evidence and reasons for the decision are discussed.[16]

Pease-Madore's argument that the *McGinnis* verbatim record requirement is an additional requirement under the Alaska Constitution is not correct. Our language setting forth the verbatim record requirement in *McGinnis* clearly reflects our understanding that the verbatim record requirement is a more protective requirement that can satisfy the written statement requirement:

> Concerning the nature of the record required of disciplinary hearings, *Wolff* held merely that "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." In the case at bar, the superior court decreed that a tape recording of the entire disciplinary proceeding is essential. Here we are in

---

[15](...continued) verbatim [recording] requirement was . . . an added obligation" and that it "did not obviate the need for a written statement." And the superior court held "that 'a verbatim record' satisfied *Wolff*'s requirement for written findings of fact."

[16]     *See* 22 AAC 05.420(b)(5)(D), (c)(3) ("[T]he tape recorder need not be operating during the deliberations of the disciplinary tribunal . . . .").

agreement with the superior court. In our view, the requirement of a verbatim record will help [e]nsure that administrators faced with possible scrutiny by state officials and the public, and even the courts when it is asserted that fundamental constitutional rights may have been abridged, will act fairly. A verbatim record of the proceedings will furnish a more complete and accurate source of information than the "written statement" requirement of *Wolff*, will assist in facilitating a more intelligent review of the disciplinary proceeding, and moreover, the use of cassettes and other means of recording hearings may well prove less burdensome than the written statement requirement.[17]

This explanation shows that we considered the verbatim record to serve the same purposes as the written statement — we determined that the verbatim record provides a more protective standard, serving those purposes at least as well as a written statement would.[18] This interpretation is supported by our subsequent statement that "the use of

---

[17]     *McGinnis*, 543 P.2d at 1236.

[18]     *Id.*; *cf. Moore v. Collins*, No. 92-8383, 47 F.3d 425, 1995 WL 71177, at *3 n.6 (5th Cir. Jan. 26, 1995) (noting that the United States Constitution does not require the recording of disciplinary proceedings but that in a prior decision the court "nevertheless agreed the measure was necessary to remedy the . . . failure to provide adequate written records of major disciplinary hearings as required by *Wolff*"); *Inmates of the Neb. Penal & Corr. Complex v. Greenholtz*, 576 F.2d 1274, 1284 (8th Cir. 1978) (finding that maintaining a record of parole hearings "in the form of tape recordings" fulfills the written record requirement under *Wolff* and "is constitutionally adequate provided that the recordings are of sufficient quality to enable the record to be reduced to writing"), *rev'd on other grounds*, *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979); *Watson v. Coughlin*, No. 86 CIV. 9217 (CSH), 1988 WL 73388, at *4 (S.D.N.Y. July 1, 1988) ("[T]here is no doubt that a statement detailing the evidence and reasons for plaintiff's discipline was made in this case . . . . The fact that that statement was made on a tape recording and only later transcribed is of no significance."); *Finney v. Mabry*, 455 F. Supp. 756, 777 (E.D. Ark. 1978) ("The functions of a written record are also fulfilled by the tape recording of the disciplinary

cassettes and other means of recording hearings may well prove less burdensome than the written statement requirement,"[19] further emphasizing the advantages of a verbatim record over a written statement. We would not have made this statement if the verbatim record requirement were in addition to the *Wolff* written statement requirement.

It is true that in *McGinnis* we did not mention the first basis identified in *Wolff*, namely that a written record would protect the inmate against possible consequences from misunderstanding the nature of the original proceedings. But this does not mean that this purpose is not served by a verbatim record — to the contrary, access to a verbatim record may do as much or more to protect the inmate from such misunderstandings.

As to Pease-Madore's argument that a written statement and a verbatim record memorialize "separate phases of the proceedings," a verbatim record may furnish a more inclusive record of the proceedings. A written statement is a more summary record, since it does not reflect the full proceeding but rather sets forth "the evidence relied on and reasons[] for the disciplinary action."[20] A verbatim record is more inclusive, consisting of a "recording of the entire disciplinary proceeding," except for the deliberations.[21] If the evidence relied on and reasons for the disciplinary action are not identified in the recording, then there is indeed a qualitative difference between the information made available through a written statement as opposed to a recording. But

---

[18](...continued) hearing . . . .").

[19]     *McGinnis*, 543 P.2d at 1236.

[20]     *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

[21]     *McGinnis*, 543 P.2d at 1236; 22 AAC 05.420(b)(5)(D), (c)(3).

if the recording includes information about the evidence relied on and the reasons for the decision, then the verbatim record fulfills this purpose and provides "a more complete and accurate source of information than the 'written statement' requirement."[22]

## B. The Superior Court Did Not Err In Holding That Due Process Was Satisfied By The Written Report And Audio Recording.

Pease-Madore argues that "[t]he superior court erred when it attempted to rely upon the incident report and the verbatim record to 'collectively meet due process concerns.'" He reads 22 AAC 05.455(a) as prohibiting the consideration of the incident report as evidence in proceedings where the officer who wrote the report was present at the disciplinary hearing.[23] He argues that it was improper for the superior court to consider the incident report to be incorporated "into the record by mere reference," that the written decisions were insufficient, and that it was inappropriate "to utilize the verbatim record to bolster the otherwise complete omission of a statement as to admissible evidence relied upon or reasons for the adjudicative decision."

---

[22] *McGinnis*, 543 P.2d at 1236; *see Wolff*, 418 U.S. at 564 ("We also hold that there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." (quoting *Morrissey*, 408 U.S. at 489)).

[23] *See* 22 AAC 05.455(a) ("A prisoner is presumed innocent of an infraction, and the facility has the burden of establishing guilt. A prisoner cannot be found guilty of an alleged infraction unless the hearing officer or a majority of the disciplinary committee, as applicable, is convinced from the evidence presented at the hearing that the prisoner's guilt is established by a preponderance of the evidence. The decision in the adjudicative phase of the hearing must be based only on evidence presented at the hearing. If a prisoner does not request the presence of the facility staff member who wrote the disciplinary report, the report may be considered as evidence by the disciplinary tribunal and alone may serve as the basis for a decision. Other hearsay evidence may be considered if it appears to be reliable. The decision in the dispositive phase of the hearing may be based on evidence presented at the hearing or contained in the prisoner's case record.").

In the words of the superior court, Pease-Madore has shown "[n]o good reason . . . as to why the hearing officer could not use [the incident report] as *part* of the basis for his decision." Under 22 AAC 05.455(a), "[i]f a prisoner does not request the presence of the facility staff member who wrote the disciplinary report, the report may be considered as evidence by the disciplinary tribunal and alone may serve as the basis for a decision." Nothing in the regulation suggests that the report may *not* be considered as evidence and serve as part of the basis for a decision if the facility staff member who wrote the report is present. To the contrary, 22 AAC 05.455(a) provides that "[o]ther hearsay evidence may be considered if it appears to be reliable," meaning that both the report and other hearsay evidence may be considered.

Pease-Madore's argument seems to be based on language from *James v. State, Department of Corrections*, where we stated that "22 AAC 05.455(a) directs that an incident report may be considered as evidence and serve as the sole basis for a disciplinary determination only '[i]f a prisoner does not request the presence of the facility staff member who wrote the disciplinary report.' "[24] However, this statement from *James* means that the incident report may serve both as evidence *and* as the sole basis for the determination only if the report writer's presence was not requested, not that the incident report may not be evidence if the writer is present. And any possible ambiguity is clarified by reference to the regulation itself as a whole, which in no way suggests that the presence of the report writer at the hearing prevents the consideration of the report as evidence.

All three disciplinary decisions include the phrase "WOR as written," which appears to denote the incorporation of and agreement with the incident reports.

---

[24] 260 P.3d 1046, 1053 (Alaska 2011) (alteration in original) (quoting 22 AAC 05.455(a)).

Pease-Madore cites *Brandon v. Department of Corrections* for the proposition that "[w]hile the disciplinary committee may rely on the reports, it is still the task of the committee to be the finder of fact and determine which facts found in the reports support violations of regulations."[25] But it is unclear whether the disciplinary decision at issue in *Brandon* contained any statement incorporating and agreeing with the incident report.[26]

In light of the detailed incident reports and the verbatim records of the three proceedings in these appeals, we conclude that constitutional due process has been satisfied. The disciplinary decision regarding the first incident notes that "officer testimony perceived statement as a threat," which shows that the disciplinary committee found that the statement had been made and was perceived as a threat; Pease-Madore did not contest having made the statement, instead arguing that it was not meant as a threat. The critical fact to be determined thus was whether Pease-Madore intended his statement to be a threat; the written decision found that it was a threat, reflecting the basis of the decision.

Similarly, the disciplinary decision regarding the second incident notes that the "[inmate] did not deny allegations but argued it to be an appropriate [sic] write-up instead." Thus, in addition to incorporating and agreeing with the incident report, the disciplinary decision also found that the facts alleged in the incident report were uncontroverted. The disciplinary decision regarding the third incident notes that the "[inmate] stated that sometimes death is funny," and the summary of Pease-Madore's

---

[25] 865 P.2d 87, 91 (Alaska 1993).

[26] *See id*. at 90-91 (indicating that the Department argued the report provided "enough information to advise [the inmate] of the reason for his guilt and allow [him] to file a meaningful appeal" but not stating whether the report had been expressly incorporated into the disciplinary decision).

statement shows that Pease-Madore did not deny the allegations but rather claimed that his statement was not intended to be threatening. The basis of these decisions is evident: Pease-Madore's explanations for his statements were not believed, and instead his statements were found to be threatening.

Although the written disciplinary hearing reports are extremely brief and undetailed, they do expressly incorporate the incident reports, which provide more details. We conclude that the verbatim records, when considered along with the incident reports and other evidence from the proceedings, satisfy the written statement requirement in *Wolff*, and, as the superior court observed, "Pease-Madore had the opportunity to review the recordings to prepare for his appeals." We therefore hold that due process was satisfied.

Even if there were procedural error, Pease-Madore has made no showing of prejudice, and therefore the "disciplinary decision[s] may not be reversed."[27] Pease-Madore argues that the statutory prejudice requirement is preempted under the Supremacy Clause of the United States Constitution because the United States Supreme Court held in *Wolff* that a written statement is required. However, we have held that "an inmate must demonstrate both that a constitutional right was violated and that the violation prejudiced the inmate's right to a fair adjudication," in order for a disciplinary decision to be reversed.[28]

Though we uphold the superior court's affirmance of the decisions of the Department of Corrections, we do not approve of or validate the Department's failure to

---

[27]     AS 33.30.295(b) provides, "A disciplinary decision may not be reversed (1) unless the court finds that the prisoner's fundamental constitutional rights were violated in the course of the disciplinary process, and that the violation prejudiced the prisoner's right to a fair adjudication."

[28]     *James*, 260 P.3d at 1056 (citing AS 33.30.295(b)(1)).

comply with its own regulations. 22 AAC 05.475(a) plainly requires that the disciplinary tribunal's "decision must include . . . a summary of the statement of the accused prisoner" and "a summary of the testimony of witnesses." The regulation also requires the decision to include "a statement of the disciplinary tribunal's adjudicative and dispositive decisions and the reasons for those decisions, including a statement of the evidence relied upon and the specific facts found to support the disciplinary tribunal's decision."[29] The Department did not comply with its own regulatory requirements. We expect the Department going forward to actually comply with its own requirements for its written decisions under 22 AAC 05.475(a).

## V. CONCLUSION

We AFFIRM the superior court's dismissals of the three appeals.

---

[29] 22 AAC 05.475(a).