NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

PATRICK H. TORRENCE,

     Appellant,

  v.

STATE OF ALASKA, DEPARTMENT
OF CORRECTIONS,

     Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

Supreme Court No. S-19038

Superior Court No. 3PA-22-02331 CI

MEMORANDUM OPINION
AND JUDGMENT*

No. 2140 – March 11, 2026

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Patrick H. Torrence, pro se, Palmer, Appellant. Thomas C. Mooney-Myers, Assistant Attorney General, Anchorage and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Borghesan, Henderson, Pate, and Oravec, Justices. [Carney, Chief Justice not participating]

## I. INTRODUCTION

An inmate was issued an infraction for failing to comply with a correctional officer's direct orders after the inmate first refused to turn over his TV and then refused to provide his offender identification number. The inmate was found guilty of violating direct orders at a subsequent disciplinary hearing. He received sanctions

---

\*    Entered under Alaska Appellate Rule 214.

of 30 days of punitive segregation (with 15 of those days suspended) along with 30 days' loss of access to the prison commissary. The inmate appealed the guilty finding and punishment, first to the prison superintendent and then to the superior court. The disciplinary hearing officer's decision was affirmed at each level.

The inmate now appeals to this court, arguing that there was insufficient evidence to support the guilty finding. He also argues the hearing officer improperly excluded evidence regarding his employment history, which constituted a violation of his due process rights. Finally, he contends that his constitutional rights under the equal protection clauses of the Alaska and United States Constitution, and under the Fifth and Eighth Amendments to the United States Constitution were violated. Because the disciplinary hearing officer's decision was supported by sufficient evidence, evidence was not improperly excluded, and the inmate's constitutional claims are without merit, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

In November 2022, Patrick Torrence was an inmate at Goose Creek Correctional Center (GCCC), where he was issued an infraction for failing to comply with a correctional officer's direct orders.[1] On the day of the incident, correctional officer Cunningham was patrolling a housing unit tasked with confiscating televisions from inmates who had not paid the required charges. Cunningham asked Torrence to turn over his TV because he did not have enough funds to pay the charge. Torrence responded that he had funds in his account for the TV and Cunningham reported that Torrence argued against the removal of the TV despite several requests to relinquish it. Cunningham eventually seized the TV. When he asked Torrence for his offender

---

[1]    22 AAC 05.400(c)(19) (defining "[h]igh-moderate" infraction to include an inmate's refusal to obey a staff member's direct order).

identification number, Torrence did not provide it. Torrence was then escorted to segregation.

### B.    Proceedings

Torrence attended a disciplinary hearing. There, the hearing officer read the incident report; Torrence pled not guilty and testified. Torrence disputed the language in the report that stated he failed to turn over the TV. Torrence did not dispute that he had not complied with the order, but took the position that, understanding the officer had the authority to take the TV, he did not prevent removal of the TV by Cunningham.

Torrence also admitted he was ordered to give his offender number and did not do so. Torrence explained that he was angry at the situation and further, he was concerned that tensions would escalate if he spoke. Therefore, when asked for his offender number as part of the intake process, Torrence said nothing.

Relying on the incident report and Torrence's testimony, the hearing officer found that "it [was] more likely than not" that Torrence told the officer that he was not going to relinquish possession of his TV, and that Torrence therefore refused that direct order. The hearing officer also found that Torrence had violated the direct order to tell the intake officers his offender number.

The hearing officer identified two mitigating factors before sanctioning Torrence: his seven-year history of good behavior and his enrollment in educational programming. Torrence argued for the consideration of a third mitigating factor: employment at the time of the incident; however, when the hearing officer called GCCC's job services department to confirm Torrence's employment status, the department stated that Torrence had been terminated. Subsequently, the hearing officer did not adopt employment as a mitigating factor and only considered Torrence's good behavior and educational programming.

The hearing officer issued sanctions of 30 days of punitive segregation, with 15 days suspended so long as Torrence was not found guilty of any further infractions over the next 180 days, and a 30-day loss of access to the prison commissary. In his official report summarizing the disciplinary hearing, the hearing officer explained that Torrence was "found guilty by preponderance of the evidence based on [Cunningham's] report as written." That same day, Torrence appealed the disciplinary hearing decision and sanctions to the GCCC superintendent, but the superintendent denied his appeal.

In June 2023, Torrence appealed both the guilty findings and the resulting sanctions to the superior court. The superior court considered whether sufficient evidence existed to support DOC's findings and whether Torrence experienced a prejudicial denial of his fundamental rights. Based on the hearing testimony, the court held that Torrence acknowledged his failure to obey a direct order when he did not provide his TV to DOC staff, and that Torrence admitted he refused to provide his offender number. As a result, there was "more than enough evidence to support the finding that Torrence disobeyed a direct order."

When he filed his appeal with the superior court, Torrence attached evidence supporting his claim that he had been employed at the time of the infraction. Therefore, he argued that his employment should have been considered as a mitigating factor. The court rejected Torrence's challenge to DOC's failure to consider his employment as a mitigating factor, explaining that evidence showing he had resigned and had not been fired was first introduced on appeal and therefore should not be considered. However, the court explained that even if it did consider Torrence's new evidence on appeal, it was "not clear that an additional mitigator would have affected the sanction Torrence received," since the hearing officer had already accounted for his programming and good behavior. The superior court affirmed DOC's findings.

Torrence appeals.

## III. STANDARD OF REVIEW

"When the superior court acts as an intermediate appellate court in an administrative matter, we independently review the merits of the administrative decision."[2] We do not reverse DOC disciplinary decisions for insufficient evidence where they are "based on some evidence that could support the decision reached."[3] Whether a party has suffered prejudice in a prison disciplinary proceeding is a legal question that is reviewed de novo.[4] To reverse a DOC disciplinary decision on constitutional grounds, we must first determine that a constitutional right was violated before considering whether that violation prejudiced the inmate's right to a fair adjudication.[5]

## IV. DISCUSSION

Torrence raises three arguments on appeal: (1) there was insufficient evidence to support a guilty finding; (2) refusal to consider evidence of his employment violated his due process rights; and (3) his equal protection,[6] Eighth Amendment, and Fifth Amendment rights under the United States Constitution were violated when he was placed in punitive segregation as a result of the hearing officer's findings. We assess the first and second arguments together as they both relate to his procedural due process claim.

---

[2] *Nordlund v. State, Dep't of Corr.*, 520 P.3d 1178, 1181 (Alaska 2022) (quoting *Button v. Haines Borough*, 208 P.3d 194, 200 (Alaska 2009)).

[3] AS 33.30.295(b)(3).

[4] *Huber v. State, Dep't of Corr.*, 426 P.3d 969, 975 (Alaska 2018); AS 33.30.295(b)(1).

[5] *Id.* at 975.

[6] It is not entirely clear whether Torrence bases his equal protection claim on Art. 1, section 1 of the Alaska Constitution, the Fourteenth Amendment to the United States Constitution, or both.

As a threshold matter, Torrence has already served out his sanctions, rendering his appeal moot. Even so, otherwise moot inmate sanction appeals are generally reviewable under the public interest exception.[7] Upon reaching the merits of Torrence's appeal, we affirm the superior court.

**A.    The Hearing Officer's Findings And Sanctions Were Grounded In Some Evidence, Adequately Satisfying Torrence's Constitutional Right To Due Process.**

Torrence argues that there was insufficient evidence presented at the disciplinary hearing to support the hearing officer's decision and ultimate sanctions. He bases his claim regarding insufficient evidence, in part, on the exclusion of evidence regarding his employment status at the time he was sanctioned. We review using the standard provided in AS 33.30.295(b)(3), which requires that we not reverse DOC disciplinary decisions if the record shows that some evidence supports the decision reached.[8]

In disciplinary proceedings, general language adopting a sufficiently detailed incident report is often enough to uphold a guilty finding.[9] We previously explained that even brief, undetailed disciplinary decisions are a sufficient basis for sanctions when they expressly incorporate the correctional officers' incident reports, if these reports provide greater detail to satisfy due process.[10] We have also reversed the imposition of sanctions in instances where the written decision form did not include any language incorporating the incident report, and the space on the form for "reasons,

---

**7**    *Brandon v. State, Dep't of Corr.*, 865 P.2d 87, 92 n.6 (Alaska 1993).

**8**    *Nordlund v. State, Dep't of Corr.*, 520 P.3d 1178, 1183-84 (Alaska 2022).

**9**    *Pease-Madore v. State, Dep't of Corr.*, 414 P.3d 671, 677-78 (Alaska 2018); *see Huber*, 426 P.3d at 973-74 (finding inmate's due process rights were violated when prison hearing officer did not incorporate language from incident report or provide other information about evidence the decision was based on).

**10**    *Pease-Madore*, 414 P.3d at 678.

evidence considered, and specific facts upon which [the] finding is based" was left blank.[11]

In Torrence's case, although the hearing report is sparse, it incorporated the incident report "as written," and detailed the relevant evidence upon which Torrence's sanctions were based: the officer's testimony that Torrence refused to relinquish his TV and Torrence's own admission that he refused to provide his inmate identification number when asked. The incident report described that Torrence argued with Cunningham and then explicitly declined to turn over his TV after being informed the TV was marked for seizure. The incident report noted that Cunningham ordered Torrence to hand over the TV three more times but that Torrence "became loud and confrontational" in response. Finally, the incident report described Torrence's refusal to give his offender number "to be scanned in intake as he was escorted to segregation." The incident report filled in any gaps in the hearing report, and the totality of the evidence is sufficient to satisfy an inmate's right to procedural due process.[12]

Torrence further argues that the decision to impose sanctions was based on insufficient evidence because his employment at the time of the incident should have been considered as a mitigating factor. Torrence explains that the hearing officer was informed that Torrence had been fired from his job, but he "provided evidence to the court that this was not true." Torrence argues that the hearing officer's failure to believe his contrary evidence rendered "due process . . . a sham." It is not clear whether Torrence ties his due process claim to either article I, section 7 of the Alaska Constitution or the Fourteenth Amendment to the United States Constitution.

---

[11] *Huber*, 426 P.3d at 974 (alteration in original) (footnote omitted) (quoting *Pease-Madore*, 414 P.3d at 678).

[12] *See Id.* at 973.

Regardless of which constitutional provision we apply, Torrence's due process argument fails.

A hearing officer's unwillingness to accept a different view of events does not give rise to a due process claim.[13] Torrence does not cite any relevant case law suggesting that could be the case.[14] This failure to cite case law is often enough to render even a self-represented litigant's arguments waived.[15] Yet Torrence's argument, even if properly raised, is not compelling. The hearing officer learned about Torrence's termination directly from the job services department, which informed him that Torrence had been fired for not performing his duties. Even though Torrence contended he provided his two-week notice to his employer, it was not improper for the hearing officer to rely instead on information from the job services department.[16] That Torrence

---

[13]    *See Nordlund*, 520 P.3d at 1184 (finding that due process rights were adequately protected under "some evidence" standard even where hearing officer relied on incident reports and video evidence that supported correctional officer's testimony over inmate's conflicting account).

[14]    Torrence cites to four federal cases for due process propositions but none relate to prison disciplinary hearings nor establish that a hearing officer's failure to accept an inmate's version of events gives rise to a due process claim.

[15]    *Griswold v. City of Homer*, 556 P.3d 252, 273 n.99 (Alaska 2024) (holding self-represented litigant's "argument . . . waived for inadequate briefing" because "he fail[ed] to cite any authority in the body of his brief or otherwise develop [his] theory"); *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005) ("Even a [self-represented] litigant . . . must cite authority and provide a legal theory.").

[16]    Although we consider whether a hearing officer had "some evidence" to support factual findings in a prisoner discipline case, even under the higher "substantial evidence" test applicable to other administrative proceedings, deference to the fact finder's credibility determinations is appropriate. *Ross v. Alaska State Comm'n for Hum. Rts.*, 447 P.3d 757, 767 (Alaska 2019) ("[W]e generally defer to the fact finder's credibility determinations when reviewing administrative adjudications for substantial evidence.").

later produced additional evidence on appeal does not mean that the hearing officer improperly relied on the evidence that was before him.

Torrence's due process rights were not violated when the superior court affirmed the findings of the hearing officer and the resulting sanctions. Since the incident report was expressly incorporated into the hearing report and includes details sufficient to support a guilty finding, Torrence's sanctions were not based on insufficient evidence, and he did not suffer a violation of his constitutional right to procedural due process.[17]

**B.**    **Torrence's Punitive Segregation Sanction Was Not A Violation Of His Fifth Amendment Right To Remain Silent And His Equal Protection Rights, Nor Did It Constitute A Violation Of His Eighth Amendment Protection From Cruel And Unusual Punishment.**

Torrence next argues in broad and general terms that his equal protection, Fifth Amendment, and Eighth Amendment rights were violated when he was sanctioned with 15 days punitive segregation. He argues that sanctions for refusing to provide his inmate number constitute punishment for exercising his right to remain silent in violation of his Fifth Amendment rights. He also states that punishing him "without sufficient evidence is cruel and unusual punishment in violation of the Eighth Amendment."

To the extent that Torrence is arguing that there were insufficient facts to support imposition of sanctions, we already addressed the sufficiency of the evidence considered by the hearing officer. What remains are Torrence's cursory references to

---

[17]    DOC may be correct that Torrence admitted to refusing to comply with both orders at his disciplinary hearing and that there was thus sufficient evidence to support his guilty verdict and sanctions. However, this is a post-decision rationale raised on appeal, and we confine our decision to the basis the hearing officer below offered in finding a violation and ordering a sanction. *Radebaugh v. State, Dep't of Health & Soc. Servs., Div. of Senior & Disabilities Servs.*, 397 P.3d 285, 294 (Alaska 2017).

violations of his equal protection rights and the Fifth and Eighth Amendments to the United States Constitution. However, Torrence has not articulated any violations of constitutional rights.

We first consider Torrence's argument regarding a violation of his equal protection rights. The Equal Protection Clause of the Alaska Constitution guarantees that "all persons are equal and entitled to equal rights, opportunities, and protection under the law."[18] The party alleging a violation must demonstrate that some similarly situated person was treated differently.[19] In *Larson v. Cooper*, an inmate alleged that prison officials had violated his constitutional rights by "suspending his contact visits to retaliate against him for holding hands with his wife in furtherance of his religious rights, for contesting his disciplinary charges and being acquitted, and for pursuing his ensuing grievances."[20] In assessing whether the superior court's dismissal of the inmate's claim was erroneous, we noted that the inmate presented no evidence demonstrating there actually was a prisoner similarly situated to him, and so he could not prove that he was treated differently from that other prisoner.[21] This weighed in favor of dismissing the inmate's claim.

Here, Torrence failed to provide evidence that he was treated differently than any similarly situated inmate, whether by evidence before the hearing officer or during his appeal to the superior court. He asserted to the superior court that he was mistreated "because he is an African American inmate," and that discrimination was

---

[18] Alaska Const. art. I, § 1. This is the state analogue to the equal protection clause of the Fourteenth Amendment to the United States Constitution, in relevant part: "No State shall make or enforce any law . . . . deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[19] *Alaska C.L. Union v. State,* 122 P.3d 781, 787 (Alaska 2005).

[20] 113 P.3d 1196, 1198 (Alaska 2005).

[21] *Id.* at 1206.

"show[n] by the treatment of his person by the white staff that were involved." Yet Torrence did not support this with any evidence of similar circumstances where other inmates received different treatment; he merely repeated his beliefs on the point. Torrence's conclusory statements, coupled with vague references to equal protection rights, are not sufficient to establish a constitutional violation.

We next consider the argument that the sanctions constituted punishment for Torrence's decision to remain silent when asked to provide his inmate identification number. The Fifth Amendment right to remain silent when the individual faces the risk of self-incrimination[22] can be invoked not just at trial, but whenever a suspect is subject to custodial interrogation.[23] For Fifth Amendment rights to be properly invoked, there must be: (1) "a custodial interrogation"; (2) "a statement that would reasonably be understood as an invocation of the privilege"; and (3) "the clear possibility from the context of the interrogation that a responsive answer might be dangerous because injurious disclosure could result."[24] Torrence's claim fails all three of these requirements.

The request for an offender number in the normal course of processing an alleged infraction does not amount to a custodial interrogation.[25] An intake officer's request for an offender number is a routine administrative task undertaken to support

---

**22** U.S. Const. amend. V ("No person shall be compelled . . . to be a witness against himself. . . .").

**23** *Munson v. State*, 123 P.3d 1042, 1047 (Alaska 2005).

**24** *Id.* at 1048 (footnotes omitted) (first citing *Miranda v. Arizona*, 384 U.S. 436, 477 (1966); then citing *Davis v. United States*, 512 U.S. 452, 459 (1994); and then quoting *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951)).

**25** *See Klemz v. State*, 171 P.3d 1169, 1172 (Alaska App. 2007) (suggesting that in a prison context, a question does not constitute interrogation under *Miranda* when question is purely administrative and not likely to elicit an incriminating response).

order and discipline in the facility.[26]  At any rate, Torrence's silence here did not constitute a proper invocation of his Fifth Amendment rights because he did not assert them,[27] nor could it be reasonably understood from this context that his failure to respond to a request for identification was an invocation of his right to remain silent. Finally, Torrence fails to articulate how disclosure of his offender number would tend to incriminate him for any crime.  The intake officer's request for his offender number was not accompanied with requests for specifics about the underlying incident, so disclosure of Torrence's offender number could not have exposed him to additional criminal liability.[28]

        As to Torrence's remaining argument, the Eighth Amendment protects against the infliction of "cruel and unusual punishments."[29]  In determining whether solitary confinement meets constitutional standards, the length of time of the confinement should be considered.[30]  But the United States Supreme Court has

---

**26**      *See Valoaga v. State, Dep't of Corr.*, 563 P.3d 42, 48 (Alaska 2025) (noting "the importance of giving prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security' " (quoting *Nordlund v. State, Dep't of Corr.*, 520 P.3d 1178, 1184 n.30 (Alaska 2022))).

**27**      *James v. State*, 75 P.3d 1065, 1068 (Alaska App. 2003) ("A person claiming the protection of the Fifth Amendment must affirmatively invoke it."); *cf. Sessoms v. Grounds*, 776 F.3d 615, 624 (9th Cir. 2015) ("[M]ere silence does not qualify as an invocation of the right to remain silent.").

**28**      *See Munson*, 123 P.3d at 1048 (noting that "proper invocation" of the right to remain silent requires a context in which "injurious disclosure could result").

**29**      U.S. Const. amend. VIII.

**30**      *Hutto v. Finney*, 437 U.S. 678, 686 (1978), *abrogated on other grounds by*, *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 55-56 (2024).

expressly rejected characterizing every decision to remove an inmate from the general population as cruel and unusual punishment.[31]

Torrence does not demonstrate how his punishment was materially different from that of other inmates.[32] Torrence was charged with a high-moderate infraction and received 30 days of punitive segregation with 15 of those days suspended, and Torrence in fact only ended up serving 15 days of punitive segregation. The legislature has set a cap on "confinement in punitive segregation" at "40 days for a high-moderate . . . infraction[.]"[33] Whether 30 or 15 days, either punishment is squarely within these guidelines. Torrence fails to show that his punishment was sufficiently different to another inmate's punishment to implicate the Eight Amendment.

## V. CONCLUSION

Because there was sufficient evidence to support DOC's disciplinary decision and sanctions, and because Torrence's constitutional claims fail, we AFFIRM the decision of the superior court.

---

[31] *Id.* ("If new conditions of confinement are not materially different from those affecting other prisoners, [those conditions] might be completely unobjectionable and well within the authority of the prison administrator.")

[32] Review of comparable reported cases turns up comparable punishments. *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1231-32 (Alaska 2003) (affirming imposition of 15 days of punitive segregation for high-moderate infraction).

[33] 2 AAC 05.470(a)(3).